NATHAN B. SAUNDERS, administrator of the estate of CHARLES

T. HOPKINS, *vs.* WILLIAM WESTON.

Somerset. Opinion July 7, 1882.

*Administrators. Assets. R. S., c. 63, § 6. Jurisdiction.*

By R. S., c. 63, § 6, an administrator appointed on the estate of a person dying out of the state, is to administer not only upon such property as was in his locality at the time of the decease of the intestate, but such as might "afterwards be found therein."

The creditor while living represents the debt, and draws it as assets to his own residence; when dead, it is represented and drawn to the residence of the debtor and follows him wherever he goes.

S was duly appointed in this state as administrator on the estate of H upon a petition in which the residence of H was alleged to have been in the state of Michigan. S commenced an action against W, whose residence at the time of the death of H and ever since has been in the state of Wisconsin, to recover a debt alleged to have been contracted in Michigan and due from W to the estate. The writ was served upon W personally while he was commorant in this state. *Held,* That the action might be maintained; that when W became a resident of this state, though temporarily and as a visitor, he brought with him the debt in suit, and so far became subject to the jurisdiction of our courts.

ON EXCEPTIONS.

Assumpsit to recover for the personal services of the intestate, alleged to have been performed for the defendant at Whitehall in the state of Michigan, as foreman in charge of the defendant's

lumbering business, in 1864–5, $1500 with interest, making the whole claim $3031.25. The writ was dated July 15, 1880. The intestate died at Whitehall, December 5, 1865. The defendant's motion to dismiss for want of jurisdiction was overruled by the presiding justice and the defendant excepted.

The material facts are stated in the opinion.

*D. D. Stewart*, for the plaintiff, cited: R. S., c. 63, § § 6, 7; *Fay* v. *Haven*, 3 Met. 114; *Dawes* v. *Head*, 3 Pick. 145; *Pinney* v. *McGregory*, 102 Mass. 186; *Blake* v. *Williams*, 6 Pick. 308; *Goodall* v. *Marshall*, 14 N. H. 161; *Goodwin* v. *Jones*, 3 Mass. 514; *Stevens* v. *Gaylord*, 11 Mass. 263; *Davis* v. *Estey*, 8 Pick. 475; *May* v. *Breed*, 7 Cush. 34, 42; *Bowdoin* v. *Holland*, 10 Cush. 17; 2 Redf. Wills, 21 (note.) *Gallup* v. *Gallup*, 11 Met. 445; *Bulger* v. *Roche*, 11 Pick. 36; *Whitney* v. *Goddard*, 20 Pick. 311; *Thibodeau* v. *Levassuer*, 36 Maine, 362.

*Joseph Baker and C. A. Harrington*, for the defendant.

This alleged debt was, as shown by the declaration in the writ, a simple contract debt. A chose in action while the creditor lived is transitory, going with his person, but upon his decease becoming localized, fixed at the residence of the debtor as it existed at the precise moment of the intestate's death, there to remain and be there administered upon, for the benefit of local creditors, and after the satisfaction of their claims, the balance to be transmitted to the place of principal administration. *Hillard* v. *Cox*, 1 Ld. Ray. 562; *Yeoman* v. *Bradshaw*, 12 Mod. 107; *Rex* v. *Sutton*, 1 Saund. 274; 1 Williams on Exec. 178; *Taylor* v. *Barron*, 35 N. H. 484; Wentworth, Ex'rs, 46; *Stevens* v. *Gaylord*, 11 Mass. 256; *Goodwin* v. *Jones*, 3 Mass. 514; *Upton* v. *Hubbard*, 28 Conn. 274; *Hooker* v. *Olmstead*, 6 Pick. 481, 482; *Abbott, Adm'r*, v. *Coburn et als.* 28 Vt. 663, 670 and 671; Chitty on Bills, p. 2, title—administration. *Dial* v. *Gary*, 12 Reporter, 184; *Beers* v. *Shannon*, 73 N. Y. 292; *Sheldon* v. Rice, 30 Mich. 301; *Vaughan* v. *Northup*, 15 Peters, 1; *Rand, Adm'r*, v. *Hubbard*, 4 Met. 252; Story, Conflict of Laws, 5th ed. § 514; *Lee* v. *Havens*, Brayton, (Vt.) 93; *Stearns* v. *Burnham*, 5 Me.

261 ; *Leonard* v. *Putnam*, 51 N. H. 250 ; *Fletcher's adm'r*, v. *Sanders*, 7 Dana, Ky. 345, S. C. 32 Am. Decisions 96 ; *Purple and Burrows* v. *Whithed*, 49 Vt. 187 ; 2 Redfield on Wills, c. 1, § 2, p. 13 ; *Mothland* v. *Wireman*, 3 Penson and Watts, 185 ; S. C. 23 American Decisions, 71 ; see also, *Merrill* v. *N. E. Ins. Co.* 103 Mass. 245–49 ; *Low* v. *Bartlett et al.* 8 Allen, 259–262 ; *Ela* v. *Edwards*, 13 Allen, 48 ; *Vaughan* v. *Barret*, 5 Vt. 333 ; *Hedenberg* v. *Hedenberg*, 46 Conn. 30 ; *Glenn* v. *Smith*, 2d Gill and Johnson, 493 ; *Stevens* v. *Gaylord*, 11 Mass. 256 ; *Cutter* v. *Davenport*, 1 Pick. 81 ; *Stearns* v. *Burnham*, 5 Greenleaf, 261 ; *Pond* v. *Makepeace*, 2 Met. 114, 116 ; *Borden* v. *Borden*, 5 Mass. 77.

At the death of the creditor, the rights of all parties became fixed, localized and crystallized, and no movements of any party after that could change the state of things, or alter the rights and liabilites. The right of creditors in Wisconsin attached at once to this debt, and could not be divested by the defendant, or any movements of his. What was assets in Wisconsin at the death of the creditor, must remain *assets there*, and could only be enforced by legal process by an administrator appointed *there*. If the visit of the defendant to this state could entitle an administrator appointed here, where the debtor did not reside at the time of the intestate's death, and where the intestate did not then reside, to maintain an action for this debt, then administration might have been taken out with the same propriety and legal force in every state through which the defendant passed from Wisconsin to Maine, Illinois, Ohio, New York, Massachusetts and New Hampshire ; and thus a debt due from a person would follow him in his travels over the country and be assets the world over, and he might leave the state of his domicile for the very purpose of defeating creditors in his own state. It would be a case of assets on trucks, and itinerant jurisdictions.

This would be entirely inconsistent with the well established rule that a debt is assets in the state where the debtor resided at the time the creditor died, and that the creditors of the debtor's domicile have a paramount right to the assets in their state.

Now to test this principle, suppose an administrator appointed

in Wisconsin had collected the debt sued for here, and *after that* the defendant had come into this state and been arrested, must he pay the claim over again, or would not the discharge of the administrator of the debtor's domicile be a complete bar. The two administrations are entirely independent of each other, and the discharge of the one not appointed where the debtor resided, would be no protection. If it is well settled law that the creditors or distributees residing in the state where assets exist at the time of the decedent's death, have a paramount claim, to all such assets, and only the residuum, if any, is to be transmitted to the administration of the domicile, and not to an ancillary administrator, by what principle of law is it that these assets can be seized and torn from those entitled to them, and brought into the county of Somerset and appropriated to the benefit of the creditors and distributees living in that county, where neither the debtor or creditor lived, and where the administration is merely ancillary.

If this debt can be collected by this plaintiff, it will be distributed here and neither the creditors in Wisconsin or Michigan will receive any share. Such a result is in direct conflict with the whole scope and tenor of law on this subject, as the cases already cited will show.

DANFORTH, J. This action was commenced by the plaintiff in his capacity of administrator, appointed by the judge of probate within and for the county of Somerset. In the petition for his appointment, it is alleged that the decedent was a resident at the time of his decease of the state of Michigan, and left property and owed debts exceeding twenty dollars in the county of Somerset. The defendant, at the time of the intestate's decease, was and still is a resident of Wisconsin, and this action is brought to recover a debt alleged to be due from him to the estate represented by the plaintiff. No question is raised as to the validity of the plaintiff's appointment. The defendant was found in the county of Somerset, and a personal service was made upon him by an arrest of his body. Under these circumstances, a motion is made by the defendant that the action be dismissed, on the ground that the debt claimed, if anything is

due, is assets in Wisconsin and not in Maine; and that therefore an administrator appointed in Maine can have no interest in, or control over it. It does not appear that any administration has ever been had in Wisconsin, or that the intestate left any creditors there.

Hence, the question involved, does not arise from a direct conflict between two administrators appointed by different local tribunals, representing different sets of creditors, but rather the rights of this plaintiff as against this defendant.

What, then, are the rights and duties of the plaintiff in this matter? for the one is clearly the test and measure of the other. These are pointed out by the statute, R. S., c. 63, § 6. Under this statute, the judge of probate is to grant letters of administration on the estate of persons dying out of the state, not only when they leave property to be administered in his county, but when such property "is afterwards found therein." It therefore became the plaintiff's duty, upon his appointment, not only to administer upon all such estate of his intestate, as he might find in his county at the time of his appointment, but such as might afterwards be found therein; and by § 7 of the same chapter the same rights and duties would devolve upon him in relation to any such property found within the state.

Was the debt sought to be recovered found within the county or state? That it is what under the laws of England would be called *bona notabilia*, and under our law assets to be administered upon, is conceded. It is, however, claimed that though while living the creditor draws to himself such debts as may be due him, so that they shall be localized wherever he is, yet, at his death, as he can no longer represent them, the debtor must, and they become localized wherever he may be, and therefore become *bona notabilia* at his place of residence. This is undoubtedly true. The numerous cases cited by counsel show this most abundantly; and it must be conceded that at the time of the intestate's death, this debt was assets subject to the jurisdiction of the probate court in Wisconsin. But it did not from that fact become so "fixed, localized and crystallized," that it could never afterwards be changed. None of the cases cited have gone

so far as that. True, some of them speak of debts as *bona nota-bilia*, or assets at the place of the debtor's residence at the date of the creditor's death, and so they are. But this language, even if it admits the inference that they would so remain, does not require that construction. Certainly if it were so, it would take something from the reputation of the common law as being the embodiment of the experience and wisdom of ages, for the result would, not infrequently, be a failure of justice. All the authorities agree that an administrator cannot maintain an action outside of the locality for which he is appointed. If, therefore, the law is as contended for, and the debtor should remove to another state, leaving no property behind, there would be no process known to the law by which the debt could be collected. The administrator appointed in his former place of residence, could not reach him, and if the principle contended for is correct, an ancillary administrator in the latter could not, for he would have no interest in or right to the debt; that, upon the theory contended for belonging to another location. Thus each would be powerless; nor could they assist each other, as there is no privity between them,—each acting in his own sphere, independent of the other, until the settlement of the estate is completed.

But we think the law is subject to no such defect. As the creditor while living represents and carries the debt with him wherever he goes, so he being dead the debtor as the only party who can do so, represents and carries it with him wherever he goes. Whatever his movements may be he cannot escape its obligation, or so long as he remains under any form of government his liability to such process as may be established by the law for its collection. None of the cases relied upon are inconsistent with this view. That of *Abbott, Adm'r,* v. *Coburn et al.* 28 Vt. 663, is apparently so, in some parts of the opinion, but the facts do not warrant such an inference. In that case the intestate died in California; the administrator was appointed in Vermont, where the decedent left no estate, and where none was afterwards found; and the defendant resided in Massachusetts, not only at the time of the decedent's death, but also at the time of the commencement of the action; and what is perhaps of more

importance, the defendant at the commencement of the action, was actually in Massachusetts, having neither presence nor residence, temporary or otherwise, in Vermont; and hence the process was not served upon her. Adopting the principle that the debtor represents and carries with him the debt, and as a necessary consequence the action could not be maintained. There was not only no debt but no other property of the intestate in Vermont, and no jurisdiction was obtained except by an attachment of the defendant's property.

But whatever may be the common law in regard to the possibility of a change in the location of the assets of an intestate after his death, there would seem to be no doubt about it under our statute. It does not assert in direct terms that such change may take place, but its provisions are utterly inconsistent with any other view. The administrator is to be appointed not only when there is property in the county at the time of the decedent's death, but when estate " is afterwards found therein." A provision utterly senseless and useless unless it refers to property brought into the county subsequent to the death of the intestate. Such is the view taken of a similar statute by the court in Massachusetts, in a very satisfactory opinion in *Pinney* v. *McGregory*, 102 Mass. 186. If an administrator can be appointed on finding such property in the county, having been so appointed, it becomes his duty to administer it.

Has such a change taken place in this case? If the defendant had become a permanent resident of the county of Somerset, there could have been no doubt about it. He residing there would bring the debt there. He was there in person. He in fact had a residence there, temporary to be sure and such as any visitor has, but nevertheless sufficient to subject him to the jurisdiction of our courts and our laws. "All persons, who are found within the limits of a government, whether his residence is permanent or temporary, are to be deemed subjects thereof." Story's Conflict of Laws, § 541. As the debt follows the person and cannot be separated from it, this brings the debt within the process and jurisdiction of the court. The person being " after-

wards found" in the county of Somerset, the debt is also "found therein."

It is objected that this would make the defendant liable in every state through which he might have occasion to pass. He might indeed be liable in any one such state in which a statute similar to ours and creditors of the intestate might be found, but not in all. That it is competent for the legislative power of this, or any state to pass such an act will probably not be denied. It may protect its creditors by the appropriation of any property within its jurisdiction, and if its legislation should not be in exact conformity with what is called the comity of nations, that would not detract from its authority. Nor does this construction of the statute subject the defendant to a liability of more than one payment. The judgment of any court having jurisdiction, must, by the constitution of the United States, be respected in every other state, and where several might take jurisdiction, that which first obtains must prevail.

*Exceptions overruled.*

APPLETON, C. J., WALTON, BARROWS and PETERS, JJ., concurred.